(No. 26833.—Respondent disbarred.)
IN RE ARNOLD B. HARRIS, Attorney, Respondent.

*Opinion filed May 20, 1943—Rehearing denied Sept. 15, 1943.*

CHARLES LEVITON, *amicus curiae*.

GEORGE A. GORDON, for respondent.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

The committee on grievances of the Chicago Bar Association, acting as commissioners under Rule 59 of this court, have recommended disbarment of Arnold B. Harris because of unprofessional, unethical and dishonorable conduct. Respondent has excepted to the report of the commissioners. The cause is here on the report, exceptions and briefs filed.

There are twelve specific charges of unprofessional conduct against respondent, all relating to cases of arrest of individuals on sex charges and detention by the police of the city of Chicago, in which cases it is charged that respondent extorted money from those persons by soliciting law business under circumstances amounting to duress,

and receiving exorbitant fees. It is also charged that this was done in conspiracy with the police officers and other persons unknown.

Respondent filed an answer denying the allegations of each specification, admitted he represented each of these persons, and made explanation of the manner in which he obtained employment, though he gives the name of no ·person as his informant or sponsor in these cases. Nine of the twelve charges were held by the commissioners to have been proved, and their report is based on those charges.

The record is large, the testimony, findings and exceptions covering more than one thousand pages of record, while the abstract contains over four hundred pages. It would serve no useful purpose and would unduly lengthen this opinion to discuss each of the specifications and the evidence on each. It is sufficient to say that they are all of the same general type. The individual was charged with a sex offense; respondent appeared to represent him, procured money and thereafter, without defendant being required to appear in court, an entry of not guilty was made or a nominal fine was assessed, which was paid from a cash bail bond. In some instances the defendant did not know until the hearing before the commissioners, what had become of the so-called case against him. In two instances the persons arrested admitted, when arrested, that they were homosexuals, but were discharged as not guilty.

The point is raised in respondent's exceptions that not all the commissioners were present at each hearing. Rule 59 of this court does not so require. The record' shows that the division which heard the cases against respondent was composed of six commissioners. The record does not disclose that any objection was raised, at the time of the hearing, to the absence of any of the commissioners. This court in the case *In re Goodman,* 377 Ill.

178, held that the attendance of all commissioners is not necessary.

There is complaint that the commissioners were biased and that this was evidenced by the fact that they asked questions of witnesses presented. There was no impropriety in their so doing, as an examination of the evidence shows that questioning by the commissioners was for the purpose of bringing out certain details in the evidence offered rather than for the purpose of bringing out new evidence. There is no evidence of hostility or bias on the part of the commissioners.

The nine persons who were arrested, and whom respondent represented, testified. Respondent admits he had never met any of the defendants before they were arrested and none of them had ever heard of him before he appeared at the lockup. There is much evidence tending to indicate that the man arrested was prevented from communicating with anyone outside until respondent appeared. There is no evidence to the contrary. In five of the cases respondent could not tell the name of the person who called him to appear at the police station on behalf of the defendant. As to one of the remaining four, respondent claimed on the hearing that he discovered him while looking for another man with a similar name. As to another of the four, respondent testified that he was sent by another lawyer, who did not know the name of the accused and whose name respondent did not divulge. As to still another he testified that a man who had witnessed the arrest of the defendant requested him to go to the police station and look after the matter, although he does not explain who the other person was or the interest of such party in the case. In one instance he gave the name of the party who had called and requested him to visit the accused. However, when that party was questioned as a witness, it appeared that he did not know the name of

the accused, but testified that he was called up by some anonymous person.

The method by which these employments were procured, according to the evidence brought out by the *amicus curiae,* was practically the same in all of the cases. In some of them a certain officer by the name of O'Malley was the arresting officer. This is the same O'Malley who figured in the *Goodman case,* which was much the same type of case. The methods followed were very similar to those followed in the *Goodman case.* To illustrate this method it is necessary only to refer to the testimony regarding a few of the cases.

One James F. Kveton and one Eugene Calazzo were arrested in the alley adjacent to the Boston Store and taken to the police station at 1121 South State street, locked up and remained there for 48 hours. Kveton's request to be allowed to call his home was denied and he was not permitted to communicate with anyone while incarcerated. The day after his arrest Kveton was questioned by officer O'Malley, who recommended respondent. Shortly thereafter the lockup keeper advised him that someone was there to see him. Respondent entered and introduced himself as a lawyer and told Kveton that he was in a jam and inquired as to how much money he had with him. Respondent fixed his fee at $600. Kveton, being unable to contact his wife by telephone, wrote a note to her on the back of respondent's card, advising her respondent had been retained as his lawyer and to pay him $100. This sum respondent received from Mrs. Kveton. About three o'clock the following day respondent reappeared and demanded $500. Thereupon Kveton, in writing, agreed to pay respondent $500 before the disposition of the case. Shortly thereafter Kveton was released without knowing how his release was accomplished. Several days later Kveton paid respondent $200 by check and the case was continued for one week. At the subsequent

hearing before the court Kveton paid respondent the additional $300 by check and the charge against Kveton was dismissed.

The second specification is that respondent took advantage of the position of one Stanley M. McMurtrie, who found himself in jail, and extorted money from him under circumstances which amounted to duress. The evidence brought out by *amicus curiae* was to the effect that McMurtrie was arrested about 10:30 P. M. on Saturday, September 24, 1938, at a moving-picture theatre. He had moved his seat two or three times; after the last move an officer took him out of the theatre to the police station at 1121 South State street, where he was locked up. He requested a lawyer be sent to him and in about twenty-five to thirty minutes he was taken from his cell and met respondent, who gave him his card and asked him if he needed help. He told respondent he wanted to get out and respondent said his fee would be $250. Respondent produced a blank check which McMurtrie signed. The arrest slip in evidence indicates that his arrest was made by "O'Malley & Co." for "invest."; that the charges were "open." Thereafter a line was drawn over the word "open," and "4210" (meaning disorderly conduct) was substituted. The following Monday, McMurtrie went to respondent's office where he was shown a receipt indicating that a $1 fine and $1 costs had been assessed against him and paid. McMurtrie testified he had never been able to learn what he was arrested for. The record shows that McMurtrie made no appearance and signed no further papers after he was released from custody. Complaint was not filed for two days after his arrest, and notwithstanding there was no personal appearance, the municipal court record shows a jury waiver, a trial, a finding of guilt and a fine of $1 and costs of $1 entered against him.

Another case was that of Jesse Ward, arrested in the lobby of a theatre August 4, 1939, about nine o'clock in

the evening, on a sex charge attempted on an officer sitting next to him in the theatre. He was locked up. His request to call the hospital where he worked, to advise them he would not be at work at midnight, was refused. In about thirty minutes he was introduced to respondent who told him it would cost him $200 to get out. Ward told respondent he had but $40. Ward was permitted to call his sister in Texas and he reported to respondent his sister said she would send the money to him the next morning. Respondent put up $25 for his release on bail and respondent accompanied Ward to his home where $40 was given to respondent. At respondent's office Ward spent $16.85 for a long-distance call to Texas and paid $5 on account. Respondent told Ward he was leaving for New York and to send him the money. The court record shows that Ward was charged with disorderly conduct, "4210," waived a jury trial, and on August 7, 1939, was found not guilty and discharged.

Another case was that of Richard S. Knightly, 61 years old, for seventeen years floor man at C. D. Peacocks, who was arrested outside the toilet room of the Randolph street station of the Illinois Central Railroad at 9:00 P. M. February 6, 1938. The police-station records show that he was first held on an "open" charge; reason for the arrest was for "invest." and later the charge placed against him was "4210," disorderly conduct. After being in a cell for some time he was told a friend was there to see him. On being taken from his cell he met respondent. He testified respondent told him he did not know what he was there for, but "whatever the officer would say would be whatever it would be." Respondent told him it would cost him $300 in order for him to go home and forget the whole thing. He gave respondent $20 and was released on bail. Later he paid the balance of $280 to a lady at respondent's office. He made no complaint that he had paid an attorney fee and had forgotten all about

it. About a year later, at the Civil Service Commission, he learned there had been a trial and that a finding had been originally entered against him with a fine of $25 and costs. Respondent admitted he was not able to recall the name of the person who called him to see Knightly; that he told Knightly it would be necessary for him to appear the next morning and bring witnesses; that he waited for Knightly at his office and, he not appearing, respondent went to the municipal court and found there had been an *ex parte* hearing and a fine of $25; that he made a motion for a new trial, explained to the court that Knightly was ill and unable to appear, and asked for an *ex parte* hearing. The court record shows that on February 8, 1939, on motion of defendant, the judgment was vacated, a new trial ordered, a jury trial again waived, and a fine of $1 and $1 costs ordered deducted from the cash bail. Knightly testified he did not at any time appear in court.

These are sufficient to show the type and specification of cases charged against respondent. In all of them he denied seeking employment by duress or conspiracy with the officers. It appears from the record that of the officers involved in this case, O'Malley was discharged from the force and others were transferred as a matter of punishment. It seems clear from the testimony that none of the parties arrested sent for the respondent and, none of them had ever seen or heard of him prior to meeting him in the jail. With but one exception all prisoners were held without opportunity to communicate with relatives or friends, and most of them were denied that privilege in violation of police regulations. Respondent called upon each of them before an opportunity was given to anyone else to learn of their arrest. Respondent in his answer named no one as having communicated with him relative to his visiting the prisoners nor did he in his testimony state that any one of the arrested parties said they had sent for him. This testimony bears strong evidence of

facts and circumstances tending to show that the police or lockup keepers were responsible for respondent's notification. Respondent admits that he exacted and was paid the fees testified to by the several arrested persons.

The argument is made here that the accused in these cases, being charged with sex crimes, were not worthy of belief. Regardless of whether that is true, there is ample evidence, either admitted by respondent or shown in the record in this case, which leads inescapably to the conclusion that respondent was seeking a livelihood by preying upon these miserable people. It is urged that the testimony of judges and lawyers of good standing that respondent bore a good reputation has been ignored by the commissioners. Such testimony is proper and is to be given due weight and consideration but is not sufficient to overcome positive testimony in the record. The offenses with which respondent is charged are those which a lawyer might well be expected to keep from the knowledge of his reputable friends, as long as he can.

Where there is a substantial doubt as to the guilt of the accused this court does not strike his name from the roll of attorneys, but an examination of this record leaves no opportunity for such doubt. No attempt has been made to justify the exorbitant fees exacted in these cases. In no instances were charges preferred against the arrested party until after respondent had interviewed him and made arrangements for his fee. No satisfactory explanation as to how respondent knew of these arrests appears in the record.

Without further extending this opinion, we are satisfied that the conclusion reached by the commissioners, as shown in their report, is correct, and that the recommendation should be approved and respondent disbarred. Respondent will be disbarred and his name stricken from the roll of attorneys of this State.

*Respondent disbarred.*